**Affirmed and Memorandum Opinion filed October 9, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00539-CV

### SPRING BRANCH WILDLIFE PRESERVE, Appellant

### V.

### THE DOW CHEMICAL COMPANY, Appellee

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 83994-CV**

## M E M O R A N D U M   O P I N I O N

Appellant Spring Branch Wildlife Preserve ("SBWP") sued appellee The Dow Chemical Company ("Dow") seeking injunctive and declaratory relief that it has an easement or right of passage to a roadway, which Dow had blocked with a fence and locked gate. SBWP also sued Dow for monetary damages under claims of trespass, abuse of easement, and nuisance. After the parties filed cross-motions for summary judgment, the trial court denied SBWP's motion and granted judgment in favor of Dow. SBWP raises five issues on appeal and Dow has filed a motion to

dismiss as moot a portion of the appeal for lack of jurisdiction. We grant Dow's motion to dismiss as moot a portion of the appeal for lack of jurisdiction and we affirm the trial court's judgment.

## I.  Background

In November 2010, SBWP purchased Lot 13, consisting of five acres of designated wetlands, in Brazoria County, Texas. The land market value is assessed at $500.00. The property faces water on two sides and the only means of ingress and egress by land is over a portion of Casco Road. The warranty deed by which SBWP acquired Lot 13 states that it is "made and accepted subject to all easements and valid restrictions affecting the property now on file, or of record in the deed records of Brazoria County, Texas." Since 1969, the Brazoria County real property records have contained an Order closing, abandoning, and vacating the relevant part of Casco Road.[1] SBWP maintains that when it purchased Lot 13, Casco Road was open from Highway 332 to the property.

In December 2012, in connection with the Gulfstream Project,[2] Dow leased Lots 8, 9, 10, 11, and 12, in Freeport, Brazoria County, Texas. The leased property is located alongside Casco Road. Dow leased the property to allow it to safely transport oversized chemical plant components to its Gulfstream construction site.

---

[1] In 1969, the then-Brazoria County Judge filed with the real property records an "Order Closing, Abandoning and Vacating Road." An unopposed petition was filed with the Commissioners' Court praying to discontinue, abandon, and vacate the road. After notice and hearing, the Commissioners' Court granted the petition and application as follows:

> It is therefore, ORDERED, that a road and easement described as follows:
>
> A strip of land 40 feet in width for a roadway being more fully described as follows: [legal description].
>
> Is and shall be vacated, closed and abandoned and the same is hereby discontinued.

[2] The Gulfstream Project is a large-scale construction project to expand Dow's production facilities in Freeport, Texas.

The components were fabricated offsite and were transported by barge down the Intercoastal Canal to a dock on the leased property. The components were then loaded onto trucks or self-propelled modular transporters and transported to the Gulfstream construction site via Casco Road and State Highway 332.

To enable Dow to use the leased property for transporting the oversized components, Dow had to construct improvements to the leased property at a cost of approximately $11 million. The improvements included building a specially constructed dock, dredging the dock slip, and improving and widening Casco Road. In April 2013, Dow sent a letter of intent to the City Manager for the City of Freeport confirming a mutual understanding between Dow and the City of Freeport with respect to the widening and improvements to Casco Road, located in Freeport, Texas, related to the Dow Gulfstream Project. The letter stated in part as follows:

> The purpose of the Casco Road Project is to allow the safe land transportation of chemical plant components from the adjacent dock site to a chemical plant construction site located in Freeport via Casco Road and State Highway 332. The significantly oversized chemical plant components are fabricated at off-site specialized shops and are transported to the site by barge. Due to the size of the components . . . Casco Road must be widened and improved.

In addition, Dow planned construction of a gated fence on the leased property across the abandoned portion of Casco Road at the dock entry point. Dow obtained the necessary permits and regulatory authorizations from the Army Corps of Engineers to allow Dow to make the improvements on the leased land.

In August 2013, the President of SBWP, Ted Dahl, drove down a portion of Casco Road to visit Lot 13. About two-thirds of the way down the roadway, Dahl encountered heavy equipment and construction materials blocking further passage. Dahl spoke to the person in charge of the jobsite and was advised that Dow was performing some work on property adjacent to Casco Road.

3

On August 15, 2013, Karan Cleland, a construction manager with Dow, visited the leased property to view the area, including the relevant part of Casco Road. Cleland observed that the property is not a residential area; rather, the area, including Lot 13, looked to be wetlands (*i.e.*, marshland with major erosion). No buildings or other improvements existed on Lot 13. Casco Road was a gravel road that ran from Highway 332 and stopped approximately where Lot 8 of the leased property begins. Casco Road did not continue through the leased property down to the water or to Lot 13, and no road was visible.

Cleland met with Dahl on August 16 at the leased property. Dahl advised Cleland that he planned to build a dock on Lot 13 and wanted to start immediately. Dahl claimed he did not have or need a permit from the Army Corps of Engineers to build a dock on Lot 13. When Dahl referenced using the road to get to his property, Cleland told him that the road to which he was referring is identified on the survey as being "vacated, closed and abandoned." Cleland advised Dahl of the improvements Dow intended to make to the existing portion of Casco Road.

After Dahl and Cleland met, Dow began construction of a fence on the leased property. The construction of the fence was completed on October 21, 2013, at a cost of $13,000.00.

On November 9, 2015, SBWP filed suit seeking injunctive and declaratory relief and money damages. According to SBWP, the fence completely blocks off the gravel portion of Casco Road and intrudes upon the non-gravel portion of the right-of-way. SBWP contends it has no reasonable access to its five-acre tract of land, and that Dow refused to remove the fence. SBWP sued for a declaratory judgment that it either has a fee interest in the easement referred to as Casco Road, or that it otherwise has an equitable interest in the road and right-of-way. SBWP also asserts in its amended original petition claims for trespass, abuse of easement,

4

and private nuisance and seeks money damages, as well as ejectment, eviction, and a permanent injunction prohibiting Dow from obstructing Casco Road.

Dow filed its verified original answer and affirmative defenses, asserting that SBWP's claims are barred by the applicable statute of limitations; that SBWP's predecessor in title abandoned the alleged easement; and that the alleged easement was terminated.

On March 27, 2016, SBWP filed a traditional motion for summary judgment requesting the trial court to sign an order declaring that (1) movant has acquired a private easement in the roadway; and (2) movant has a right to keep the roadway open and to make reasonable use thereof. In support of its motion, SBWP attached the affidavit of Dahl. Dahl asserted, among other things, that SBWP acquired a private easement – a right to keep Casco Road open and to make reasonable use thereof – when the roadway was included in a 1909 subdivision plat. In his affidavit, Dahl also relies upon a survey prepared by Doyle & Wachstetter that identifies the relevant part of Casco Road as "vacated, closed & abandoned." SBWP also sought monetary damages.

On June 16, 2016, Dow filed its cross-motion for traditional summary judgment and response in opposition to SBWP's traditional motion for summary judgment. Dow claimed it was entitled to summary judgment on SBWP's private easement claims because SBWP's suit is barred by the applicable statute of limitations. Alternatively, Dow argued it was entitled to summary judgment on the merits of SBWP's private easement claims, asserting that SBWP cannot show it owns property abutting an existing public right-of-way because the southwest portion of Casco Road was officially closed and abandoned in 1969. Additionally, in the alternative, Dow argues that SBWP has no private easement by virtue of a 1909 plat because its property does not abut the street in which SBWP is claiming a

5

private easement. Next, Dow asserted that SBWP's trespass claim based on private easement rights to the existing or abandoned portion of Casco Road failed as a matter of law because SBWP has no ownership or possessory interest in the property. Finally, Dow argued that SBWP's motion for summary judgment should be denied because it failed to conclusively prove all essential elements of its private easement claims. Lastly, Dow objected and moved to strike improper summary judgment evidence.

On April 19, 2017, the trial court granted Dow's cross-motion for summary judgment and denied SBWP traditional motion for summary judgment. This appeal timely followed.

During the pendency of the appeal, Dow filed a motion to dismiss as moot a portion of the appeal for lack of jurisdiction. Dow argues that a portion of SBWP's claims are now moot because Dow is no longer leasing the property in which SBWP claims an easement right in this case. We ordered the motion carried with the appeal.

## II. Analysis

SBWP raises five issues on appeal focusing on whether (1) the two-year limitations period bars SBWP's claims for the non-monetary relief of ejectment, eviction, injunction, and a declaration of its rights under the theories of trespass, abuse of easement, and private nuisance; (2) SBWP's Lot 13 abuts the "platted" easement; (3) the County Commissioners' Court can "abandon" SBWP's express easement rights; (4) the trial court erred in granting Dow's motion for summary judgment regarding SBWP's claim for monetary relief (damages) based on theories of trespass, abuse of easement, and private nuisance; and (5) the trial court should have granted SBWP's motion for summary judgment.

We first address Down's motion to dismiss as moot a portion of the appeal for

6

lack of jurisdiction.

## A.     Jurisdiction

Dow contends that it is no longer leasing or in possession of Lots 8-12 and does not control the gated fence; thus, Dow argues that SBWP's claims for non-monetary relief (*i.e.*, declaratory and injunctive relief) must be denied as moot.

According to Dow, its lease of Lots 8-12 expired on December 11, 2017. Dow terminated the lease early on November 6, 2017. Dow maintains that it removed the lock on the gate prior to November 6, 2017, and vacated the property. Hence, Dow argues there is no longer a justiciable case or controversy between SBWP and Dow with regard to the property. In response, SBWP contends, without authority or foundation, that the fact that the lease expired does not moot any issues because "Dow could comply with, under threat of contempt, an injunction to, for example, remove the fence and gate." We disagree.

When this appeal was filed, Dow was still leasing Lots 8-12; however, Dow made the final lease payment on November 6, 2017, and the lease was terminated. Dow has vacated the premises. Dow has remained the only defendant in this case. Because Dow no longer has a possessory or any other legal interest in Lots 8-12, or any portion of the alleged easement SBWP seeks to enjoin Dow from obstructing, the portion of the appeal seeking injunctive relief or an order for removal of obstructions against Dow and requesting a declaratory judgment as to rights to the easement is denied as moot. We dismiss the moot portion of this appeal for lack of jurisdiction. *See Briones v. Brazos Bend Villa Apartments*, 438 S.W.3d 808, 812–13, 815 (Tex. App.—Houston [14th Dist.] 2014, no pet.). No case or controversy exists between Dow and SBWP other than claims for monetary damages against Dow. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (declaratory judgment available only if a real and substantial controversy exists as

7

to the rights and status of the parties and the controversy will be resolved by the declaration sought).

Dow's motion to dismiss as moot a portion of the appeal for lack of jurisdiction is granted.

## B.      Waived and Forfeited Claims

### 1.      Express easement claim not preserved

In its appellate brief, SBWP argues for the first time that it had an "express easement." SBWP claims that the "easement in this case is an express-grant easement that was created by the filing of a plat in the county deed records in 1909 when the area was not yet a municipality." SBWP, however, did not present this issue to the trial court; thus, it is not preserved and cannot be considered on appeal as grounds for reversal.[3] *See* Tex. R. Civ. P. 166a(c); *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex. 1992); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677–79 (Tex. 1979).

### 2.      No trespass claim with regard to alleged easement

SBWP concedes in its brief that a party cannot prevail on a trespass claim based on an easement right. *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). SBWP further maintains in its brief that it "does not seek to reinstate its damage claim based on the trespass theory."

Thus, the trial court's judgment is affirmed as to this issue.

---

[3] Even if this claim had been raised in the trial court, it would be precluded by the two-year statute of limitations. *See, infra,* Section II.C.

**C.      Monetary Damage Claims for Interference with Alleged Private Easement**

Dow maintains that summary judgment was proper on SBWP's remaining claims for interference with its alleged easement, asserting the claims are barred by the statute of limitations.

### 1.  Standard of review

The summary judgment standards of review are well-known.  We review *de novo* the trial court's order granting summary judgment.  *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Wyly v. Integrity Ins. Solutions*, 502 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2016, no pet.).  We consider the evidence in the light most favorable to the non-movant, and indulge reasonable inferences and resolve all doubts in its favor.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Wyly*, 502 S.W.3d at 904.  "We credit evidence favorable to the non-movant if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not."  *Wyly*, 502 S.W.3d at 904.

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  Summary judgment is appropriate if the movant conclusively negates at least one essential element of the plaintiff's claim.  *Wyly*, 502 S.W.3d at 905.

When the defendant moves for summary judgment on the basis of an affirmative defense, such as limitations, it has the burden to prove conclusively all the elements of the affirmative defense as a matter of law.  *See KPMG Peat Marwick*

9

*v. Harrison Cty. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997). The defendant must prove when the cause of action accrued and negate the discovery rule, if applicable, by proving as a matter of law that there is no genuine issue of fact regarding when the plaintiff discovered or should have discovered the nature of the injury. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *Diaz v. Westphal*, 941 S.W.2d 96, 97–98 (Tex. 1997). Whether the plaintiff knew or should have known of an injury is generally a question of fact for the jury, unless the defendant establishes that there is no genuine issue of material fact establishing that the plaintiff knew or should have known of the injury. *See Houston Endowment, Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156, 160 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

When, as here, the trial court does not specify the grounds it relied upon in granting the motion, we will affirm if any of the grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

### 2. Two-year statute of limitations bars claims

An action for damages to real property must be brought within two years of the injury. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Velsicol Chem. Corp.*, 956 S.W.2d at 530. Generally, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). The question of when a cause of action accrues is one of law for the court. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 131 (Tex. App.—Houston [14th Dist.] 1994, no writ).

The characterization of whether an injury to land is "permanent" or "temporary" is important to determining when the two-year statute of limitations

begins to run with respect to claims of damage to real property. Whether an injury is legally classified as "permanent" or "temporary" is determined by the continuum of the injury. *See Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984). Permanent injuries to land result from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely; the injury must be constant and continuous, not occasional, intermittent, or recurrent. *See id.*; *Loyd*, 956 S.W.2d at 126. An action for permanent injury to land accrues upon discovery of the first actionable injury and not on the date when the extent of the damages to the land is fully ascertainable. *See Bayouth*, 671 S.W.2d at 868; *Cooke v. Maxam Tool & Supply, Inc.*, 854 S.W.2d 136, 139 (Tex. App.—Houston [14th Dist.] 1993, no writ). In contrast, temporary injuries are those which are not continuous, but instead are sporadic and contingent upon some irregular force such as rain. *See Bayouth*, 671 S.W.2d at 868; *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978).

Here, SBWP does not contest that the two-year limitations period is applicable to monetary claims for abuse of easement and nuisance. *See Schneider v. Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269–70 (Tex. 2004); *see* Tex. Civ. Prac. & Rem. Code § 16.003(a). Additionally, SBWP does not dispute Dow's summary judgment evidence that Dow erected a fence and gate on October 21, 2013, and that SBWP filed its lawsuit on November 9, 2015. SBWP further concedes that the time between the erection of the fence and gate and the filing of the lawsuit is more than two years.

In response to Dow's motion asserting that SBWP's remaining claims for interference with its alleged easement (*i.e.*, nuisance and abuse of easements claims) are barred by the statute of limitations, SBWP asserts that "as for claims regarding ownership of real property, the adverse possession statutes apply." There is no

11

authority supporting SBWP's contention that the ten-year statute of limitations for adverse possession governs its remaining claims. Claims for ownership of real property are irrelevant and do not apply here, where no such claims are being, or can be, made.

In its appellate brief, SBWP further argues that the two-year period of limitations is not a bar to SBWP's claims because it has alleged a "continuous tort" that does not accrue until the tortious acts have ceased.[4] SBWP, however, did not raise this argument in the trial court. As such, it is not preserved for appellate review and does not now defeat summary judgment. *See* Tex. R. Civ. P. 166a(c); *Travis*, 830 S.W.2d at 100; *Clear Creek Basin Auth.*, 589 S.W.2d at 677–79.

In sum, SBWP alleged a permanent nuisance, which was subject to an expired two-year statute of limitations, thus precluding its claims. *See Scott v. Babb*, 419 S.W.3d 531, 532–34 (Tex. App.—San Antonio 2013, no pet.) (holding that plaintiff's suit for interference with a private easement and seeking removal of encroaching fence and injunction against future interference was barred by two-year statute of limitations); *Auerbach v. Dallas Area Rapid Transit*, No. 05-94-01207-CV, 1995 WL 447530, at *1, *2–5 (Tex. App.—Dallas July 26, 1995, writ denied) (affirming trial court's dismissal of plaintiff's easement claims and holding that plaintiff's claims for abuse of easement and injunction ordering removal of billboard

---

[4] A continuous tort involves wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Arquette v. Hancock*, 656 S.W.2d 627, 629 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). For a continuing tort, "the cause of action is not complete and does not accrue until the tortious acts have ceased." *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 156 (Tex. Civ. App.—Dallas 1980, no writ). Here, SBWP complains about the erection of a fence and gate obstructing its alleged easement. For this reason, even if SBWP's argument were not precluded, SBWP's claims for nuisance and abuse of easement should not be treated as a continuous tort for limitations purposes, but rather as a permanent nuisance. *Cf. City of Amarillo v. Ware*, 40 S.W.2d 57, 58 (Tex. 1931) (describing a fence as a "valuable and permanent improvement[]" on land).

in the easement were bared by the two-year statute of limitations).

As such, the trial court's judgment is affirmed as to this issue.

## D.     SBWP's Summary Judgment Properly Denied

SBWP failed to meet its summary judgment burden to conclusively establish the essential elements of its private easement claims. As set forth above, Dow conclusively negated essential elements of SBWP's private easement claims by demonstrating SBWP's suit was barred by the applicable statute of limitations. As such, the trial court correctly denied SBWP's summary judgment motion on its private easement claims, and properly granted Dow's cross-motion for judgment. *See Wesson v. Jefferson S&L Ass'n*, 641 S.W.2d 903, 906 (Tex. 1982) (error for the trial court to grant summary judgment because plaintiff did not prove an essential element of her claim).

The trial court's judgment is affirmed as to this issue.

## III.   Conclusion

Dow's motion to dismiss as moot a portion of the appeal for lack of jurisdiction is granted. SBWP's non-monetary claims, seeking injunctive and declaratory relief, are dismissed for lack of jurisdiction. The order of the trial court is affirmed as to SBWP's remaining claims.


/s/     John Donovan
         Justice


Panel consists of Justices Boyce, Donovan, and Wise.

13